159 So.2d 198

**BANKERS FIRE AND MARINE INSURANCE COMPANY**

v.

**CONTRACTORS EQUIPMENT RENTAL COMPANY.**

**6 Div. 602.**

Supreme Court of Alabama.

Dec. 20, 1963.

H. H. Grooms, Jr., and Spain, Gillon & Young, Birmingham, for appellant.

London, Yancey, Clark & Allen, Birmingham, for appellee.

GOODWYN, Justice.

Appeal by defendant from judgment rendered on jury verdict for plaintiff in suit on an insurance policy.

The complaint, as last amended, consisted of two counts. Defendant's demurrer to amended count 1 was sustained and its demurrer to amended count 2 was overruled. The case went to the jury on amended count 2, as follows:

"The Plaintiff claims of the defendant the sum of Two Thousand Nine Hundred Thirty and 38/100 ($2,930.38) Dollars, with interest thereon, for the damage to a 530W Lorain Truck Crane which the defendant, on the 30th day of September, 1957, insured against loss or injury under its policy No. SP–370018 which is specifically designated as a Schedule Property Floater Policy, and which contains an 'all risk' contractors equipment form describing the Lorain Truck Crane hereinbefore mentioned and insuring the aforedescribed equipment against direct loss or damage resulting from any external cause, which said piece of insured equipment belonging to the plaintiff was directly damaged by external cause on, to-wit, February 19, 1958, of which the defendant has had notice."

Pleading was at length. The defendant interposed four pleas, as follows:

### "PLEA ONE

"The allegations of said count are untrue.

### "PLEA TWO

"In the policy here sued on, it is provided as follows:

" 'This policy does not insure against loss or damage occasioned by the weight of a load exceeding the registered lifting or supporting capacity of any machine.'

Defendant avers that the loss or damage to said crane was occasioned by the weight of a load exceeding the registered lifting or supporting capacity of said crane.

### "PLEA THREE

"Defendant adopts for the purposes of this Plea the quoted provision of the policy set out in PLEA TWO. For further averment defendant says that the loss or damage to said crane was occasioned by the overweight of the load being moved by said crane at the time it was allegedly damaged and that this weight load exceeded the registered lifting capacity of said crane.

### "PLEA FOUR

"In the policy here sued on, it is provided as follows:

" 'This policy does not insure against wear, tear and gradual deterioration; breakage and/or rust, unless the same be the direct result of fire, lightning, explosion, cyclone, tornado, windstorm, flood, earthquake, collision, derailment or overturn of conveyance, malicious damage or aircraft damage.'

Defendant avers that the damage to said crane was caused by wear, tear, and gradual deterioration."

By way of replication, plaintiff joined issue on plea one, averred that the allegations of pleas two and three are untrue and joined issue on the same, and, as to plea four, averred that defendant had waived the right to interpose as a defense the matters and things alleged therein. In support of such waiver there is attached to the replication several exhibits consisting of correspondence between plaintiff and plaintiff's

attorney and representatives of the defendant insurance company.

The only evidence in the case was that offered by the plaintiff.

There are 43 assignments of error. However, only 11 are sufficiently argued to warrant consideration. These will be treated in the order in which they are argued in appellant's brief. We find no reversible error in these assignments.

### Assignments 22 and 23.

These two assignments, which present the main question to be resolved on this appeal, charge error in the refusal of appellant's requested affirmative charges with and without hypothesis.

Appellant takes the position that these two assignments should be dispositive of the case; that appellee "wholly failed to make out its case by its own witnesses, and the appellant having offered no testimony," the requested affirmative charges should have been given. It is argued that there was a failure of proof "that the damage to the crane resulted from an external cause"; that the evidence showed the boom on the crane buckled from some unknown cause and that the verdict thus rested on guess, supposition, speculation or conjecture. See: Howell v. Roueche, 263 Ala. 83, 87, 81 So. 2d 297; Camp v. Atlantic Coast Line R. Co., 251 Ala. 184, 190, 36 So.2d 331; Griffin Lumber Co. v. Harper, 247 Ala. 616, 622, 25 So.2d 505; Atlantic Coast Line R. Co. v. Wetherington, 245 Ala. 313, 318, 16 So.2d 720.

It is our view, however, that the evidence supports a reasonable inference that the damage resulted from an external cause. The evidence shows that, at the time of the damage, the crane was engaged with another crane in moving a "concrete batch plant" suspended in air about eight inches off the ground; that prior to moving the plant a few minutes before the boom buckled, it was necessary for the plant to be "broken loose" from its anchored position, which required a considerable strain on the boom of the crane. This evidence was uncontradicted; and we think it is sufficient to support a reasonable inference that the damage to the crane resulted from an external cause, that is, a reasonable inference that the strain on the crane in breaking loose the "concrete batch plant" from its anchored position and moving it was the external force causing the damage to the crane. Whether such force exceeded "the registered lifting or supporting capacity" of the crane, or whether the damage to the crane "was caused by wear, tear, and gradual deterioration," as pleaded by appellant, are questions which are not resolved by the evidence. Appellant had the burden of proving its pleas. See: Bankers Fire and Marine Insurance Company v. Bukacek, 271 Ala. 182, 189, 123 So.2d 157, 84 A.L.R.2d 672; Belt Automobile Indemnity Ass'n v. Ensley Transfer & S. Co., 211 Ala. 84, 87, 99 So. 787. It did not meet this burden. The burden, of course, was on appellee to reasonably satisfy the jury that the damage resulted from an external cause. Our conclusion is that this burden was met.

On the question of the verdict resting on supposition, guess, speculation, or conjecture, appellant places principal reliance on the following from Southern Ry. Co. v Dickson, 211 Ala. 481, 486, 100 So. 665:

"As this court has often declared, findings of fact based on conjecture merely cannot be upheld. Southworth, Adm'x v. Shea, 131 Ala. 419, 30 South. 774; Miller-Brent Lbr. Co. v. Douglas, 167 Ala. 286, 52 South. 414; John v. Birmingham Realty Co., 172 Ala. 603, 55 South. 801; Carlisle v. C. of G. Ry. Co., 183 Ala. 195, 62 South. 759; Dorman's Case [St. L. & S. F. R. R. Co. v. Dorman, 205 Ala. 609, 89 South. 70], supra. As said in Southworth, Adm'x, v. Shea:

" 'Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury

can with equal probability be attributed to some other cause.'

"But a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. * * *"

■ However, it is the next following sentence in the Dickson opinion which has application to the case before us, viz:

" * * * On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence."

In Alabama Power Co. v. Pierre, 236 Ala. 521, 524, 183 So. 665, 668, a case involving a question similar to the one before us, it was not clear from the evidence what caused the fire which destroyed plaintiff's home. However, the evidence showed that two hours prior to discovery of the fire, defendant's workmen had been using matches and a blowtorch near where the fire started. In holding that a jury question was presented by the evidence, the court quoted from the Dickson case (211 Ala. 481, 100 So. 665), supra, and then stated:

"True, there is no positive proof as to the cause of the fire, and many different causes may be imagined. But where, as here, the evidence points to one theory of causation, indicating a logical sequence of cause and effect, there is a juridical basis for such determination, notwithstanding the existence of other plausible theories, whether with or without support in the evidence.

"In the instant case we are of the opinion a reasonable inference is deducible from the evidence that the fire did in fact originate from the careless manner in which the plumbers used the torchlight and struck matches underneath the kitchen, and that, therefore, it cannot be said the evidence is without 'selective application' as to plausible explanation of its origin. The affirmative charge requested upon the contrary theory was of consequence properly refused."

### Assignments 1 and 2.

■ These assignments charge error in overruling appellant's demurrer to amended count 2. It is argued that the allegations in this count that plaintiff's equipment was insured "against direct loss or damage resulting from any external cause," and that the equipment was "directly damaged by external cause on, to-wit: February 19, 1958," were not sufficient "to apprise the appellant of the matters and things it would be called upon to defend," thereby rendering the count defective and subject to the demurrer.

The overruling of the demurrer was not error. The count follows the wording of the policy in alleging a direct damage from an external cause. That is sufficient. See: Life & Casualty Ins. Co. of Tennessee v. Tollison, 223 Ala. 78, 80, 134 So. 805; Maryland Casualty Co. v. McCallum, 200 Ala. 154, 155, 75 So. 902; Pacific Mut. Life Ins. Co. v. Shields, 182 Ala. 106, 108, 62 So. 71.

### Assignments 5 and 9.

■ These assignments relate to the overruling of appellant's demurrer to appellee's replication alleging a waiver of the policy provision interposed as a defense in defendant's plea four.

If there was error in overruling the demurrer, it was error without injury. Supreme Court Rule 45, 261 Ala. XIX, XXXVII. Appellant, in interposing its plea 4, assumed the burden of proving that the damage to the crane "was caused by wear, tear, and gradual deterioration." But no evidence was offered in support of the plea. Accordingly, there was no basis for the replication (alleging a waiver of the defense set up by plea 4) to come into play or be considered.

### Assignment 30.

██ This assignment charges error in giving appellee's requested charge 5 as follows:

"5. I charge you if you are reasonably satisfied from the evidence that defendant by its course of conduct prior to and including June 24, 1958, confined its grounds of denial to the matter plead, as a defense under Pleas 2 and 3 to the plaintiff's claim, then you cannot render a verdict in favor of the defendant under Plea 4."

The giving of this charge, if error, was error without injury (Supreme Court Rule 45, supra) since appellant did not prove its plea 4.

### Assignment 27.

██ This assignment charges error in refusing to give appellant's requested charge No. 9, as follows:

"9. I charge you that the burden is on the plaintiff to reasonably satisfy you from the evidence that the loss and damage to the crane resulted from an external cause and if you are not so reasonably satisfied, then I charge you that you cannot return a verdict for the plaintiff."

This charge was properly refused because it was substantially covered by the oral charge to the jury and charges 8 and 14 given at the request of appellant. Code 1940, Tit. 7, § 273.

### Assignment 39.

██ This assignment charges error in overruling appellant's objection to the following question propounded to appellee's witness Rutledge:

"Q. All right. Now, I want to ask you, please, sir, in your experience of 20 years as a crane operator, was there anything else you could have done, or anybody else could have done, in the inspection of the boom to see if it was all right to use?"

Appellant argues that this question was patently bad because it "not only asked what the witness *could* have done, but what *anybody else* could have done"; that its "objections that this called for a conclusion and mental operation were each well taken." It is also argued that the question was invasive of the province of the jury.

Appellee takes the position that this witness was testifying as an expert and that the question called for his shorthand rendition of his expert opinion as to what was reasonable according to the generally accepted practices under the circumstances inquired about; that "being qualified as an expert it was eminently proper for Mr. Rutledge to be allowed to voice his opinion for whatever it was worth to the effect that there was nothing else he could have, or that anybody could have done, in the inspection of the boom to see if it was all right to use."

It is further argued that "even if it should be conceded that the question was improper, the fact that the court overruled the appellant's objection and allowed the defendant to answer is of no moment because it concerns an immaterial issue"; that "the parties pled at length, and there was no defense asserted by the appellant to the effect that lack of proper inspection of the boom before its collapse by the appellee voided its coverage with" appellant. Appellee says that Supreme Court Rule 45 is applicable. We agree.

*Assignment 34.*

■ This assignment charges error in overruling appellant's objection to the following question propounded to appellee's witness Rutledge:

"In your twelve years of experience in operating a crane, I will ask you, in your field of work, what is the custom of operators with reference to the registration of lifting capacities that they rely on; what is standard?"

This was objected to on the ground it was hearsay.

Appellant argues that "proof of matters pertaining to a custom is not admissible before the existence of the custom has been established by evidence"; that "unless knowledge of a custom is presumed, which is not the case here, ordinarily there must be a foundation for the introduction of evidence thereof by evidence of knowledge"; that "the question assumed that there is a custom and assumed that this witness had knowledge of it"; that "a custom must be certain and uniform, general, notorious, and well established"; that "the question takes for granted what is not established and since there was no intent to establish the existence of the custom by the standard referred to, the information elicited could be only hearsay and nothing more."

Appellee says that appellant never did challenge Rutledge's qualifications as an expert and at no time made any objection to Rutledge's testimony "on the ground that it was not shown the witness did not have sufficient knowledge of the matters and things inquired about for him to be competent to testify concerning them"; that this witness' testimony shows "that he was a man of considerable experience in the field concerning which he was being examined, and the jury could well infer that he had specific knowledge of the point inquired about in the question here being considered"; that, "in any event, the appellant never challenged either the knowledge or the expertness of Mr. Rutledge and now

should not be heard to complain"; that "furthermore, the witness was allowed to testify without objection that he knew of no other set of registrations than those which came with the pieces of equipment and which were placed at points where they could be seen by the operator; that "the witness also was asked the question whether or not it was standard operational procedure in making lifts to conform them to the regulation of the lifting capacity which is posed on the wall of the cab, to which defendant's attorney interposed a general objection without making any specific ground"; that, "in response Rutledge answered:

" 'If he doesn't know the weight of the lift that he is making that is the standard rule.' "

that "it, therefore, appears that the appellant allowed testimony to come in without proper objection which supplies the answer to the question which is the subject of assignment of error 34 of appellant" (citing in support Harvey Ragland Co. v. Newton, 268 Ala. 192, 196, 105 So.2d 110, 112, where it was held that "prejudicial error may not be predicated upon the admission of evidence which has been admitted without objection or motion to exclude at some other stage of the trial.")

Aside from any other reason, we think the last point made by appellee rendered innocuous any error (assuming, without deciding, there was error) in overruling appellant's objection to the question.

*Assignment 43.*

This assignment charges error in admitting in evidence plaintiff's Exhibit 9 (a chart, which came from the crane, purporting to show the lifting capacity of a 530W Lorain truck crane, the kind involved in this suit) over appellant's objection that it was hearsay.

■ Other reasons aside, admitting the chart in evidence was not reversible error for the reason that such evidence was material only on the issues presented by appellant's pleas 2 and 3, and appellant of–

fered no evidence in support of said pleas. In other words, there being an absence of evidence that the damage to the crane was occasioned by the weight of a load exceeding the crane's registered lifting or supporting capacity, no jury question was presented as to the issues raised by pleas 2 and 3. In this situation, prejudicial error in admitting the chart in evidence is not made to appear.

The judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.