406 So.2d 1184 (1981)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,
v.
UNIVERSAL ATLAS CEMENT COMPANY, United States Steel Corporation, Lmv Leasing, Inc., William Henry Parker and Geri Dietrichs, Appellees.
No. YY-68.
District Court of Appeal of Florida, First District.
November 18, 1981.
Rehearing Denied January 7, 1982.
*1185 Ronald L. Palmer and Jack W. Shaw, Jr., of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for appellant.
Charles Cook Howell, III, of Howell, Howell, Liles, Braddock & Milton, Jacksonville, for appellees.
JOANOS, Judge.
State Farm Mutual Automobile Insurance Company appeals from an order entered in a dispute concerning insurance coverage. Appellant contends that it was error for the trial court to hold that appellant's policy provided "primary" insurance coverage and to award attorney's fees to an appellee for the prosecution of an indemnity action against appellant. We find no error and affirm the judgment appealed from.
LMV Leasing, Inc., leased an automobile to the United States Steel Corporation for use by its subsidiary company, Universal Atlas Cement. Universal designated its employee, William Henry Parker, as the driver. Parker, in turn, allowed a friend, Geri Dietrichs, to drive the vehicle. While driving the auto, Dietrichs was involved in *1186 a collision with a motorcyclist. The motorcyclist filed suit against all of the parties that are appellees in this proceeding.
Appellee Dietrichs is insured by appellant State Farm Mutual with policy limits of $15,000. The State Farm policy provided primary coverage, but set out a number of conditions or exceptions to that primary liability. One of the exceptions provides that in the event an insured drives a non-owned automobile, State Farm's liability becomes that of an excess carrier, if "other collectible insurance" is available.[1]
Appellee U.S. Steel is insured by the Insurance Company of North America (INA), which is not a party to this case. Our review of the policy indicates that it is a deductible form of umbrella-type excess insurance.[2] The policy coverage has a $1 million deductible. U.S. Steel is self-insured for the $1 million deductible, the self-insurance program being administered by an INA subsidiary.
U.S. Steel, and the other appellees filed a third party complaint against State Farm, contending that State Farm was primarily liable due to the active negligence of its insured, Dietrichs. State Farm affirmatively defended, arguing that either the INA policy or U.S. Steel's self-insurance was "other collectible insurance," the effect of which would be to cause State Farm's coverage to be in the nature of excess insurance.
U.S. Steel successfully negotiated a settlement with the motorcyclist in favor of all of the defendants/third party plaintiffs, including State Farm's insured, Dietrichs. U.S. Steel and the other third party plaintiffs moved for summary judgment. In the order appealed from, the lower court granted the summary judgment, holding there was no "other collectible insurance" and awarded U.S. Steel the $15,000 proceeds from the State Farm policy, costs, attorney fees for defending State Farm's insured against the motorcyclist, prejudgment interest, and fees for prosecution of the third party action against State Farm.
State Farm has argued that U.S. Steel's self-insurance constitutes "other collectible insurance," within the meaning of its policy's exception. In State Farm Mutual Insurance Co. v. Vines, 193 So.2d 180, 182 (Fla. 1st DCA 1966) this court construed the term "collectible insurance" to refer to an insurance policy, the proceeds of which are collectible as distinguished from uncollectible due to the insurance company's insolvency. In Southeast Title and Insurance Co. v. Collins, 226 So.2d 247, 248 (Fla. 4th DCA 1969), cert. denied, 232 So.2d 180 (Fla.), "other valid and collectible insurance" was defined as a contract whereby one party indemnifies another against loss from certain specified contingencies or perils. Self-insurance, even though administered by someone else, does not fall within this definition and, therefore, is not "other *1187 collectible insurance." 8A Appleman, Insurance Law and Practice § 4912 (1981).[3] Thus, the State Farm policy is not excess over U.S. Steel's self-insurance.
Alternatively, State Farm has argued that the INA excess insurance policy constitutes "other collectible insurance," and that this makes the State Farm coverage excess over the INA coverage. We disagree with this view, because the INA policy is an umbrella-type of excess insurance, the key purpose of which is to give extended coverage at a comparatively modest cost where primary coverage or self-insurance ends. The INA umbrella coverage is a vehicle by which increased protection and security is extended to the insured. The language utilized in the respective policies indicates that the INA policy was intended to be true excess coverage over and above the State Farm coverage.
Aetna Casualty and Surety Co. v. Beane, 385 So.2d 1087 (Fla. 4th DCA 1980), reh. denied, supports our view. In Aetna Casualty, Aetna attempted to equate its excess insurance clause, which is virtually identical to State Farm's excess insurance clause, to the umbrella-type excess insurance clause of American States Insurance, which is virtually identical to the INA clause herein. In holding the American States policy excess over Aetna's policy, that court rejected Aetna's contention by noting that the American States policy provided not only "coverage in excess of other available insurance coverage, but also that the coverage `shall not contribute with such other insurance.'" Id. at 1090. The State Farm and INA policy clauses before us dovetail in the same fashion,[4] indicating State Farm's coverage is not excess over the INA policy. Clearly, State Farm is responsible for primary coverage in this case.
With reference to appellant's challenge of the award of attorney's fees, we note that attorney's fees are available to an insured, the insured's estate, specifically named policy beneficiaries, or third parties claiming coverage through assignment under Section 627.428(1), Florida Statutes. Roberts v. Carter, 350 So.2d 78, 79 (Fla. 1977). In citing an example of a third party claiming coverage through assignment, the Supreme Court in Roberts, supra, at 79 n. 7, noted its previous decision in All Ways Reliable Building Maintenance, Inc. v. Moore, 261 So.2d 131 (Fla. 1972).
In defending the award of attorney's fees U.S. Steel relies heavily on All Ways Reliable, wherein an agent of an insurance company authorized repair work in adjustment of a fire loss to Mrs. Moore's house which was completed by All Ways Reliable. The insurance company refused to pay the claim, and All Ways Reliable filed suit. In deciding the case in favor of All Ways Reliable, the Supreme Court found that "an implied contract existed in favor of All Ways Reliable which logically included an assignment of Elsie Moore's fire claim loss against her insurance company to All Ways Reliable." All Ways Reliable, supra, at 132. The case seems to us heavily grounded on the implied contract between the insurance company and All Ways Reliable.
*1188 As noted in Tipper v. Great Lakes Chemical Co., 281 So.2d 10 (Fla. 1973), there are two types of implied contracts. Implied-in-fact contracts require the assent of the parties.
[C]ontracts implied in law, commonly referred to as quasi-contracts, are obligations imposed by law on grounds of justice an equity, and do not rely upon the assent of the contracting parties. This legal fiction was adopted by the law to provide a remedy in instances where one of the contracting parties is unjustly enriched.
Id. at 13.
In Florida it has been recognized that it is the duty of the insurer to defend its insured. C.A. Fielland, Inc. v. Fidelity & Casualty Co. of New York, 297 So.2d 122 (Fla. 2d DCA 1974), cert. denied, 309 So.2d 6 (Fla. 1975); 18A Fla.Jur. Insurance, § 812 (1971). The duty is generated by reviewing the complaint filed against the insured to determine, if the allegations could bring the insured within the policy provisions of coverage. National Union Fire Insurance Co. v. Lenox Liquors, Inc., 358 So.2d 533 (Fla. 3d DCA 1977), reh. denied, (1978); see also Florida Farm Bureau Mutual Insurance Co. v. Rice, 393 So.2d 552, 555 n. 4 (Fla. 1st DCA 1980), reh. denied, (allegation in third party complaint may be reviewed).
Reviewing either the original complaint, filed by the motorcyclist; or the third party complaint, filed by appellees against State Farm, we find that the allegations were sufficient to bring Dietrichs within the coverage provisions of the State Farm policy. We also note that by its contract of insurance State Farm had obligated itself to defend its insured. Even though State Farm may argue that it is not liable to its insured, this is irrelevant, because the duty to defend is far broader than the duty to pay. Florida Farm Bureau Mutual, supra, at 555 n. 4.
"Thus, while an insurance company is within its rights in making a thorough investigation to determine whether the accident in question comes within the coverage of its policy, the company acts as its peril in refusing to defend its insured and will be held responsible for the consequences." Id. at 555-556. In State Farm's case in refusing to defend its insured, it acted in a perilous manner, because as it turns out, it is the primary insurer. Had it not been for the defense afforded by U.S. Steel, State Farm's insured would have been left either to flounder in a sea of hostile litigation or to hire counsel.
Since State Farm has been determined to be the primary insurer in this case, it would be unjustly enriched if we did not hold it accountable for its unjustified refusal to defend. This unjust enrichment forms the foundation of the implied or quasi-contract between State Farm and U.S. Steel which logically includes an assignment of Geri Dietrichs' claim against State Farm to U.S. Steel. All Ways Reliable, supra. U.S. Steel falls within the category of a third party claiming coverage by assignment and is entitled to attorney's fees under Section 627.428(1), Florida Statutes, for prosecution of the indemnification action against State Farm.
The order of the trial court is therefore AFFIRMED.
ROBERT P. SMITH, Jr., C.J., and THOMPSON, J., concur.
NOTES
[1] The relevant excerpts as they appear in the State Farm policy are as follows (policy emphasis omitted; emphasis that appears is supplied by court):

9. Other insurance.
* * * * * *
(b) The insurance with respect to
(i) a temporary substitute automobile
(ii) a trailer, or
(iii) a non-owned automobile, owned by any person or organization engaged in the automobile business, shall not apply to any liability or loss against which the insured or the owner of such vehicle has other collectible insurance applicable thereto in whole or in part.
(c) Subject to the foregoing paragraph (b), the insurance with respect to any other temporary substitute automobile, trailer, or non-owned automobile shall be excess over other collectible insurance.
[2] The policy when taken as a whole indicates that it is pure or umbrella-type excess insurance. The policy is not only entitled "EXCESS LIABILITY POLICY ... (Deductible Form)," but a number of policy provisions support our view. One provision that is particularly relevant states:

[Condition] K Other Insurance.
If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with other insurance ... (emphasis added).
[3] See also Zinke-Smith, Inc. v. Florida Ins. Guaranty Ass'n, Inc., 304 So.2d 507, 509 (Fla. 4th DCA 1974), cert. denied, 315 So.2d 469 (Fla. 1975) (state approved program of self-insurance under workmen's compensation act does not convert self-insurer into an insurer as that term is defined in Section 624.03, Florida Statutes); Friedfield v. Royal Indemnity Co., 167 So.2d 586 (Fla. 3d DCA 1964), cert. denied, 174 So.2d 30 (Fla. 1965); Carolina Casualty Ins. Co. v. Insurance Co. of North America, 595 F.2d 128, 143 n. 53 (3d Cir.1979); Universal Underwriters Ins. Co. v. Marriott Homes, Inc., 286 Ala. 231, 238 So.2d 730, 732 (1970) (state approved workmen's compensation program of employer's self-insurance is not "other insurance," because that term means a policy of insurance issued by an insurance company); Home Indemnity Co. v. Humble Oil & Refining Co., 314 S.W.2d 861, 865 (Tex.Civ.App. 1958) reh. denied (state approved auto self-insurance does not constitute "other valid and collectible insurance"); 18A Fla.Jur. Insurance § 937 (1971); contra Southern Home Ins. Co. v. Burdette's Leasing Service, Inc., 268 S.C. 472, 234 S.E.2d 870, 872 (1977) (auto leasing company's state approved self-insurance constitutes "other valid and collectible insurance").
[4] Compare State Farm provision in Note 1 with INA provision in Note 2.