PARKER, Judge,
Dissenting.
I respectfully dissent.
While I agree with the majority that chapter 80-510, Laws of Florida, is constitutional, I disagree with their conclusion that the creation of the Medical Malpractice Self-Insurance Trust Fund (the trust fund) is the equivalent of the purchase of insurance. Section 286.28, Florida Statutes (1979) (now repealed), which is relied upon by the trial court and the majority, utilized terms and phrases including “pay the premiums,” “insurance contract,” and “insurer.” The trust fund established by the appellant has no premiums; there is no insurance contract; there is no insurer. I, therefore, cannot conclude that the trust fund is the equivalent of insurance. Insurance is a contract by which a party pays a premium and shifts a specified risk to an *715 other party. If appellant had paid a premium to an insurance company to procure liability coverage for á negligent act, pursuant to section 286.28, its sovereign immunity would have been waived up to the amount of insurance coverage. However, where, as here, appellant had fully funded the trust fund and retained the risk, this, in my opinion, was not the equivalent of insurance.
Although not directly applicable to this appeal, it is instructive to note that section 624.02, Florida Statutes (1979) defined the term “insurance” as a “contract whereby one undertakes to indemnify another or pay or allow a specified amount or a determinable benefit upon determinable contingencies.” When the appellant placed some of its own assets in an escrow account, there was no contract whereby any party was indemnifying appellant. The trust fund simply does not comply with this definition of insurance.
The issue presented here appears to be one of first impression in Florida. A court, however, has addressed the analogous issue of whether self-insurance should be considered “other collectible insurance” for the purpose of an insurance contract’s excess coverage provision. In State Farm Mut Auto. Ins. Co. v. Universal Atlas Cement Co., 406 So.2d 1184 (Fla. 1st DCA 1981), petition for review denied, 413 So.2d 877 (Fla.1982) the court found that self-insurance, even when administered by a third party, does not fall within the definition of “other collectible insurance” as used for a policy’s excess coverage. Although there is a split of authority, the tendency is for courts not to regard self-insurance as “insurance.” 8A J. Appleman, Insurance Law and Practice § 4912 (rev. ed. 1981); see Am. Family Mut. Ins. Co. v. Missouri Power & Light Co., 517 S.W.2d 110 (Mo.1974); United Nat’l Ins. Co. v. Philadelphia Gas Works, 221 Pa.Super. 161, 289 A.2d 179 (1972); Universal Underwriters Ins. Co. v. Marriott Homes, Inc., 286 Ala. 231, 238 So.2d 730 (1970); and Allstate Ins. Co. v. Zellars, 452 S.W.2d 539 (Tex.Civ.App.), modified on other grounds, 462 S.W.2d 550 (Tex.1970). But see Aetna Casualty & Surety Co. v. Market Ins. Co., 296 So.2d 555 (Fla. 3d DCA 1974); Southern Home Ins. Co. v. Burdette’s Leasing Serv., Inc., 268 S.C. 472, 234 S.E.2d 870 (1977).
Further, the Supreme Court of South Dakota responded to its governor’s request for an opinion on the exact issue presented in this appeal. In re Request for Opinion of the Supreme Court Relative to the Constitutionality of SDCL 21-32-17 and Construction of SDCL 21-32-16, 379 N.W.2d 822 (S.D.1985). South Dakota law authorized the state to purchase liability insurance (similar to sections 286.28(1) and 768.28(13)). Another South Dakota law provided that sovereign immunity would be waived to the extent that liability insurance was purchased (similar to section 286.28(2)). The governor inquired whether the government’s establishment of a fund for the payment of claims would waive sovereign immunity. The supreme court opined that sovereign immunity would not be waived by the establishment of the self-insurance fund.
American Nurses Association v. Passaic General Hospital, 192 N.J.Super. 486, 471 A.2d 66 (Super.Ct.App.Div.), reversed on other grounds, 98 N.J. 83, 484 A.2d 670 (1984), although factually different, also supports the conclusion that self-insurance is not insurance. The court stated:
We start from the premise that so-called self-insurance is not insurance at all. It is the antithesis of insurance. The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer. The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of risk of loss by the one upon whom it is directly imposed by law or contract.
192 N.J.Super. at 491, 471 A.2d at 69. There, however, is authority contrary to my position. See Martin v. Georgia Dep’t of Pub. Safety, 257 Ga. 300, 357 S.E.2d 569 (1987) (If a state establishes a self-insurance fund, the state waives sovereign immunity and the self-insurance fund stands on the same footing as proceeds available from a policy issued by a private carrier.)
*716 Although there appears to be no Florida cases directly on point, it is my opinion that the better-reasoned view is that the trust fund is not insurance as contemplated by section 286.28, Florida Statutes. My position, therefore, is that the appellant is only liable for $50,000, pursuant to section 768.-28(5), Florida Statutes (1980 Supp.).